IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       *Plaintiff,*

  v.

CELSO ALBERTO MELGAR, JR.,

       *Defendant.*

Criminal No. 2:20-cr-134 - 1

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Pending before the Court is Defendant Celso Alberto Melgar, Jr.'s Motion to Revoke or Amend Detention Order (ECF No. 31), which is a notice of appeal, pursuant to 18 U.S.C. § 3145(a)(1), of the Order of Detention Pending Trial issued by Chief United States Magistrate Judge Cynthia Reed Eddy on July 2, 2020.  The Court has undertaken a *de novo* review of the transcript from the detention hearing, the parties' pleadings and arguments, the evidence presented by the parties, and the entire record.  After careful consideration, the Court DENIES Melgar's appeal.  It AFFIRMS Chief Magistrate Judge Eddy's July 2, 2020 Order of Detention (ECF No. 29).  Melgar will remain detained pending trial.

## **PROCEDURAL HISTORY**

A federal grand jury returned a one count Indictment against Melgar on June 23, 2020, charging him with conspiring to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 846.  (ECF No. 20).  The Government sought Melgar's

detention, and a detention hearing occurred on July 2, 2020 before Chief Magistrate Judge Eddy. (ECF Nos. 8, 28, and 34).  Chief Magistrate Judge Eddy found that a rebuttable presumption of detention arose under 18 U.S.C. § 3142(e)(3) and that Melgar had not introduced sufficient evidence to rebut the presumption.  It was Chief Magistrate Judge Eddy's conclusion that clear and convincing evidence existed that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community and a preponderance of the evidence existed that no condition or combination of conditions of release would reasonably assure Melgar's appearance as required.  In addition to the findings made on the record, Chief Magistrate Judge Eddy's reasons for detention included the following: the weight of the evidence against Melgar is strong; and he has significant family or other ties outside the United States.  (ECF Nos. 29 and 34 at pp. 28-30).

Melgar appealed the detention order seeking *de novo* review under 18 U.S.C. § 3145.  (ECF No. 31).  A hearing has not been requested, and the Court finds it unnecessary.  It will decide the appeal on the existing record.

## STANDARD OF REVIEW

A District Judge reviews the decision of a Magistrate Judge granting or denying bail *de novo*.  *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  The Court retains the discretion to make its determination after reviewing the record developed before the Magistrate Judge or to accept additional evidence from the parties and rule on an expanded record.  *See* 18 U.S.C. § 3142(f)(2)(B).

In this case, a rebuttable presumption exists under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions would reasonably assure the appearance of Melgar as required and reasonably assure the safety of the community from the commission of further crimes by Melgar

2

given the grand jury's return of an Indictment charging him with a violation of the Controlled Substances Act, 21 U.S.C. § 801, *et. seq.*, for which the maximum possible sentence is 10 years' incarceration or more. By virtue of the grand jury's return of an Indictment, probable cause exists that Melgar committed this offense. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

To rebut this presumption, Melgar bears the burden to produce some credible evidence that he will appear and will not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).[1] Rebuttal of the initial presumption shifts the burden to the Government to demonstrate by clear and convincing evidence that Melgar is a danger to the community and that a preponderance of the evidence exists that Melgar will not appear. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). In making its determination of whether there are conditions or a combination of conditions of release that will reasonably assure that Melgar will appear and that the safety of the community is not at risk, the Court must weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g). The four factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of Melgar; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Melgar's release. 18 U.S.C. § 3142(g).

The Court must, therefore, make the initial determination of whether Melgar has proffered sufficient evidence to rebut the initial presumption against pretrial release. If so, the Court must

---

[1] Even if Melgar is able to satisfy his initial burden of production to rebut the presumption against release, it does not completely eliminate the presumption favoring detention from further consideration; rather, it remains a factor to be considered among those weighed by the Court.

next determine whether the Government satisfied its burden of demonstrating by clear and convincing evidence that Melgar will not appear and that he poses a threat to the community.

## ANALYSIS

After consideration of the evidence and arguments of counsel, the Court concludes that Melgar failed to rebut the initial presumption that no condition or combination of conditions would reasonably assure the safety of the community if he is released.  This alone would warrant detention.  However, the Court's examination of the materials before it leads it to the conclusion that, even if Melgar had rebutted the presumption, the Government persuaded the Court by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community if Melgar were to be released and that a preponderance of evidence exists that Melgar would not appear.  The Court agrees with the conclusion reached by Chief Magistrate Judge Eddy that Melgar should be detained.

As to the nature and circumstances of the offenses charged and the weight of evidence, these factors favor pretrial detention.  The nature and circumstances of the offense charged is very serious.  Melgar is charged with a felony offense for his participation in a drug trafficking conspiracy.  Not discounting Melgar's presumption of innocence, the weight of the evidence against him is strong.  Search warrants were obtained for a vehicle (white Hyundai Elantra) and hotel room (Room 625 at the Courtyard by Marriott located at 5308 Liberty Avenue in Pittsburgh) Melgar and Eduardo Linares shared on June 5, 2020 after a multi-month investigation involving various investigative techniques.  Melgar and Linares are residents of Southern California.  In late April, the men were observed in a Toyota Tacoma with California registration plates in Pittsburgh. Melgar rented a Nissan Maxima at the Pittsburgh International Airport and the two men were observed driving the vehicle to Chicago in early May and they returned to Pittsburgh from Chicago

with another man.  Upon their return to Pittsburgh, the three men went to a residence at 54 Southern Avenue where law enforcement observed items being taken from that address and loaded into the Nissan Maxima used by Melgar and Linares.  Shortly thereafter, Melgar and Linares checked out of their hotel, returned the Nissan Maxima, and then drove the Toyota Tacoma back to California. (ECF No. 34, pp. 8-11, 20).

The men returned to Pittsburgh, and, on June 5, 2020, Linares drove the white Hyundai Elantra rented by Melgar to 54 Southern Avenue.  Linares had keys and opened the front door. Both men went into the residence and then exited a few minutes later.  Linares was carrying a brightly colored box.  Melgar drove away and when stopped by law enforcement officers, Linares attempted to flee on foot.  A kilogram of suspected narcotics was recovered from the brightly colored box located on the passenger side floor.  Linares was found to be in possession of a key to access a basement room at 54 Southern Avenue where two more kilogram packages of suspected narcotics and $600,000.00 was discovered.  Field testing of a portion of the narcotics revealed that it was heroin, a Schedule I controlled substance.  (ECF No. 34, pp. 11-13, 18-19).

A search of the room registered to Melgar at the Marriott was then conducted.  In between one of the beds and the window was a Coach bag that contained between one and two thousand dollars, a boarding pass in the name of Melgar, and a pass for a separate flight for which the traveler was not yet identified.  In the same location there was a Nike backpack that contained currency totaling approximately $40,000.00.   A search warrant was also executed at Linares' residence in California where two high-powered firearms, armor piercing rounds, and approximately $10,000.00 was recovered.  (ECF No. 34, pp. 12-13, 15-16, 18).

Thus, the Court finds that the weight of the evidence as to Melgar's participation in a drug trafficking conspiracy is strong and it factors his pretrial detention.

Next, the Court considers Melgar's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" under § 3142(g)(3)(A). Melgar, a United States citizen, is not a resident of Pennsylvania; he is a resident of Southern California. He resided in Guadalajara, Mexico, and attended high school and college there. Several times a year, Melgar travels to Mexico. In Southern California, he has a food truck and has successfully run his licensed business for four years. He made timely payments on the loan for his trailer and food truck. Additionally, Melgar has strong family ties to Southern California and has daily contact with this immediate family members. Melgar has no criminal history. (ECF No. 34, pp. 22, 25, 29-30) (ECF No. 31, ¶¶ 4-16).

After considering all of Melgar's history and characteristics, the Court finds that while this is a somewhat neutral factor, it tips against release. The Court is concerned about Melgar's lack of ties to the Western District of Pennsylvania. It is also concerned about his routine travel across the country as well as out of the country. Added to this, Melgar has the financial means to leave his business in Southern California for periods of time to travel, rent vehicles, and buy airplane tickets.

The last factor for consideration by the Court involves Melgar's risk of non-appearance and the seriousness of potential harm to any persons or the community. 18 U.S.C. § 3142(g). After conducting its de novo review, the Court reaches the same conclusion as Chief Magistrate Judge Eddy - that there is a risk of Melgar failing to appear at further proceedings in this case. As noted in the previous paragraph, Melgar has no ties to the Western District of Pennsylvania, and he has the financial means to travel out of the district and country to evade prosecution.

As to the seriousness of potential harm to any persons or the community, there is no doubt that drug trafficking poses a substantial harm to the community. *See United States v. Perry*, 788 F.2d 100, 111 (3d Cir.1986) (danger to the community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses). *Cf. United States v. Strong*, 775 F.2d 504, 507 (3d Cir.1985) (statutory language unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community). The danger to the community is the likelihood that Melgar will, if released, traffic in illicit drugs. Ultimately, the Court must predict pretrial recidivism if Melgar is released pending trial. Strict conditions of release, including home confinement and electronic monitoring, cannot guarantee that Melgar will no longer engage in criminal activity. Melgar has failed to assuage the Court's concern about him imperiling the community, particularly given that he allegedly traveled across the country on numerous occasions to traffic in large quantities of illegal substances. Hence, the last factor weighs strongly in favor of detention.

## CONCLUSION

The Court concludes that Melgar has not met his burden to rebut the applicable presumption of detention under § 3142(g). Rather, the evidence leads the Court to conclude that, if released, Melgar would pose a risk to the community. Even if Yates had met his burden, the Court would still find detention appropriate. The Court's examination of the record leads it to conclude that the Government established by clear and convincing evidence that Melgar is a danger to the community and that a preponderance of the evidence exists that Melgar would not appear for future proceedings in this case. Pretrial detention is warranted.

The Motion to Revoke or Amend Detention (ECF No. 31) is denied, and the Court will enter the appropriate Order of Detention Pending Trial.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

July 24, 2020
Date